**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 09-1408**

DOUGLAS HOFMANN; COURTNEY JENKINS,

            Plaintiffs – Appellees,

      v.

MARTHA O'BRIEN, Individually and as Representative of the
Estate of John O'Brien,

            Defendant  - Appellant.

Appeal from the United States District Court for the District of
Maryland, at Baltimore.    William D. Quarles, Jr., District
Judge.  (1:06-cv-03447-WDQ)

Submitted:  January 27, 2010        Decided:  February 26, 2010

Before NIEMEYER, KING, and AGEE, Circuit Judges.

Affirmed in part, reversed in part, and remanded by unpublished
per curiam opinion.

Bart Garry, LAW OFFICE OF BART GARRY, Baltimore, Maryland, for
Appellant.   Frank K. Friedman, Izak J. Howell, WOODS ROGERS
P.L.C., Roanoke, Virginia; Kenneth M. Berman, BERMAN, SOBIN,
GROSS, FELDMAN & DARBY, LLP, Gaithersburg, Maryland, for
Appellees.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

In November 2008, a jury found Martha O'Brien ("O'Brien") liable for copyright infringement arising from her now-deceased husband's unauthorized commercial use of a photograph owned by Plaintiff Douglas Hofmann. It awarded $201,550 in damages to Hofmann. The jury also found O'Brien liable for conversion of the photograph that had been infringed, and in granting Hofmann's motion for injunctive relief, the district court ordered that O'Brien return all copies of the photograph to Hofmann. Following the jury's verdict, O'Brien filed a motion for a remittitur or new trial, which was denied by the district court. O'Brien timely appealed, alleging that the district court erred in denying the motion and in instructing the jury on damages. For the reasons that follow, we affirm in part, reverse in part, and remand for a new trial on damages.

At trial, the evidence showed that Hofmann, a well-known painter, had set up a photo shoot with a number of ballet students and their teacher and taken numerous photographs, including one he titled "Mary's Class." The photograph ended up in the possession of John O'Brien, also a painter, without Hofmann's permission. John O'Brien then created a painting from that photograph, which essentially copied the image in the photograph. The testimony also showed

2

that no permission was given or license granted for John O'Brien to create a painting or other work from Hofmann's photograph, or for John or his wife to sell or offer for sale a print or reproduction of the painting. O'Brien also acknowledged that after her husband passed away she had placed an image of the allegedly infringing painting on a website containing her husband's work, and that a copy of the painting could be ordered through the website.

Hofmann and Aaron Young, Hofmann's former agent, both testified about the harm that resulted from the infringement of Hofmann's photograph. Hofmann stated that the infringing work "ruins" his market, and that O'Brien's act of putting copies on the internet affects the price of both his paintings and his prints, although he did not provide further details regarding the specific amount by which the price was affected or clarify how this actually occurred. Young testified that "in our industry, the worst thing that can happen is that someone starts to copy your work, because it becomes sort of your trademark. It's what you're known for." Young explained that Hofmann's prints had been sold "for many thousands of dollars and paintings for tens of thousands, maybe even $100,000." He added that "when copies come out and dealers . . . are offered paintings that are exact copies and all the rest, that's the single worst thing that can happen to an artist." Young further

3

explained that "[i]t undermines everything that an artist has, and causes tremendous confusion in the marketplace, which disrupts the marketplace to the point where [Hofmann's] work stops selling."

On appeal, O'Brien raises three challenges to the actual damages award and one challenge regarding the jury instructions on damages given by the district court. Specifically, O'Brien asks this court to determine:

A.	Whether non-economic compensatory damages and general statements of damages are recoverable under the Copyright Act of 1976?

B.	Whether the District Court erred in failing to grant a remittitur or a new trial, when economic losses were at most $1550.00,[1] and the jury instructions did not call for non-economic compensatory damages, while the jury awarded damages of $201,550.00?

C.	If [Hofmann] was not legally entitled to non-economic compensatory damages, but [O'Brien] did not object to the jury instruction pertaining to non-economic compensatory damages, whether this would still constitute plain error?

D.	Whether [Hofmann] proved economic damages of $1550.00?

In challenging the district court's denial of her motion for remittitur or new trial, O'Brien argues: (1) that the $200,000 in damages awarded by the jury were "non-economic

_____

[1] Hofmann testified at trial that his out-of-pocket costs to set up the photo shoot at which the "Mary's Class" photograph was taken totaled $1,550.00.

4

compensatory damages for general harm to the plaintiff's reputation," although non-economic damages are not permissible under the Copyright Act, (2) that even if the damages awarded can be considered compensatory, the evidence presented was "too speculative to constitute legal damages," and (3) that the $1,550 it cost to produce the photo shoot was improperly awarded because the photo that was produced from the photo shoot was ordered returned by the court, "and therefore there was no economic loss." O'Brien also asserts, somewhat contradictorily, that the general damages jury instruction was not improper and only permitted economic damages as specified in the Copyright Act, and also that as the instruction "pertain[ed] to non-economic compensatory damages," the instruction constituted plain error by the district court.

A district court's denial of a motion for remittitur or a new trial is reviewed for abuse of discretion. Robinson v. Equifax Info. Servs., 560 F.3d 235, 242 (4th Cir. 2009). "A district court abuses its discretion by upholding an award of damages only when 'the jury's verdict is against the weight of the evidence or based on evidence which is false.'" Id. (quoting Cline v. Wal-Mart Stores, Inc., 144 F.3d 294, 305 (4th Cir. 1998)). When reviewing the district court's denial of a motion for a new trial, this court is "permitted to weigh the

5

evidence and consider the credibility of witnesses." Cline, 144 F.3d at 301.

O'Brien was awarded actual damages under the damages provision of the Copyright Act of 1976, which entitles a copyright owner "to recover the actual damages suffered by him or her as a result of the infringement, and any profits of the infringer that are attributable to the infringement and are not taken into account in computing the actual damages." 17 U.S.C. § 504(b) (2006). In other words, "the damages awarded under § 504(b) can be stated as plaintiff's loss plus defendant's gain." Walker v. Forbes, Inc., 28 F.3d 409, 412 (4th Cir. 1994); see also id. (explaining that "by stripping the infringer not only of the licensing fee but also of the profit generated as a result of the use of the infringed item, the law makes clear that there is no gain to be made from taking someone else's intellectual property without their consent").

The statute does not define the term "actual damages," and this court has explained that "the experience of copyright damages has been one of case-by-case assessment of the factors involved, rather than application of hard and fast rules." Walker, 28 F.3d at 412. However, general principles have emerged with regard to proving actual damages. First, "[c]ourts and commentators agree [§ 504(b)] should be broadly construed to favor victims of infringement." On Davis v. The Gap, Inc.,

6

246 F.3d 152, 164 (2d Cir. 2001). As a result, depending on the nature of the work and the infringement, courts have established a variety of tests for determining the amount of actual damages necessary to compensate a copyright owner for the infringement. Where "a copier of protected work, instead of obtaining permission and paying the fee, proceeds without permission and without compensating the owner," the owner "has suffered damages to the extent of the infringer's taking without paying what the owner was legally entitled to exact a fee for." Id. at 165. In other words, once a copyright has been infringed, the law permits recovery of the fair market value of the licensing fee that would have been charged for the item that has been infringed. Id. at 166; see also Jarvis v. K2 Inc., 486 F.3d 526, 533 (9th Cir. 2007) (holding that "in situations where the infringer could have bargained with the copyright owner to purchase the right to use the work, actual damages are 'what a willing buyer would have been reasonably required to pay to a willing seller for plaintiffs' work'" (quoting Frank Music Corp. v. Metro-Goldwyn-Mayer, Inc., 772 F.2d 505, 512 (9th Cir. 1985))).

Courts also permit recovery of actual damages based on a calculation of lost sales by the copyright owner. See Polar Bear Prods., Inc. v. Timex Corp., 384 F.3d 700, 708 (9th Cir. 2004) ("'Actual damages are usually determined by the loss in

7

the fair market value of the copyright, measured by the profits lost due to the infringement or by the value of the use of the copyrighted work to the infringer.'" (quoting McRoberts Software, Inc. v. Media 100, Inc., 329 F.3d 557, 566 (7th Cir. 2003))); Data Gen. Corp. v. Grumman Sys. Support Corp., 36 F.3d 1147, 1170 (1st Cir. 1994) ("Actual damages are generally calculated with reference to the loss in the fair market value of the copyright, often measured by the profits lost as a result of the infringement."). The plaintiff bears the burden of proving that his loss of revenue was due to the infringement. See Data Gen. Corp., 36 F.3d at 1170.

Further, while the nature of actual damages may require a court to "engage in some degree of speculation," id. (quoting Stevens Linen Assocs., Inc. v. Mastercraft Corp., 656 F.2d 11, 14 (2d Cir. 1981)), "the amount of damages may not be based on 'undue speculation.'" On Davis, 246 F.3d at 166 (quoting Abeshouse v. Ultragraphics, Inc., 754 F.2d 467, 470 (2d Cir. 1985)); see also Jarvis, 486 F.3d at 534 (explaining that "[e]xcessively speculative claims of damages are to be rejected"). Accordingly, "[a] plaintiff seeking actual damages must prove the existence of a causal connection between the alleged infringement and some loss of anticipated revenue." Thoroughbred Software Int'l, Inc. v. Dice Corp., 488 F.3d 352, 358 (6th Cir. 2007) (internal quotation marks and alterations

8

omitted); see also Polar Bear Prods., Inc., 384 F.3d at 708 (explaining that there must be a "causal link between the infringement and the monetary remedy sought"); cf. Harper & Row Publishers, Inc. v. Nation Enters., 471 U.S. 539, 566-68 (1985) (noting that in the context of fair use, a copyright holder must establish "with reasonable probability the existence of a causal connection between the infringement and a loss of revenue"). Thus, although a copyright owner "may seek compensation for both direct and 'indirect' losses," such as enhanced good will, market recognition, and reputation, those claimed losses must be supported by the evidence and not be unduly speculative. Data Gen. Corp., 36 F.3d at 1171. General claims of "hurt feelings" or an owner's "personal objections to the manipulation of his artwork" must not enter the calculus. Mackie v. Rieser, 296 F.3d 909, 917 (9th Cir. 2002).

O'Brien asserts that the district court erred in denying her motion for remittitur or new trial because the court permitted a jury award of $200,000 that was based on non-economic damages, that even if the damages were economic damages they were too speculative, and that, as there was no economic loss for the photograph once the court ordered it returned, the $1,550 award also was improper. As to O'Brien's first argument, we conclude that the record fails to confirm that $200,000 of the jury's total award reflected compensation

9

for non-economic damages suffered by Hofmann. In fact, because there was no breakdown of the damages award, it is not at all clear how the jury apportioned the total award, and whether it believed it could or in fact did award non-economic damages, or solely economic damages. However, as discussed below, the jury instructions were clear that only economic damages were to be awarded and, absent evidence to the contrary, we have no reason to conclude that the jury did not faithfully deliberate as instructed.

As to O'Brien's second argument, however, we agree that even assuming all damages awarded by the jury were properly intended to compensate Hofmann for economic injuries, there was insufficient evidence to support the jury's award. Accordingly, we are compelled to conclude that the district court erred in denying O'Brien's motion.

At trial the testimony showed that there could have been economic damages to Hofmann for a variety of reasons, including that flooding the market with infringing works by O'Brien adversely impacted the market for Hofmann's work, that Hofmann was prevented from painting his own works from the photographic image in question because it had been taken from him, and that Hofmann suffered damage to his reputation as an artist based on the presence of O'Brien's infringing works. However, although Hofmann is competent to testify regarding the

10

injury or destruction in value to the copyright by the O'Briens' actions, he failed to present any reliable evidence upon which an award of economic damages could be permissibly based. See Fitzgerald Publ'g Co. v. Baylor Publ'g Co., 807 F.2d 1110, 1118-19 (2d Cir. 1986). Instead, Hofmann made general claims about the harm he suffered and the damage to the market for his paintings resulting from O'Brien's act of putting copies on the internet, summarily stating that it affected the price of his paintings and his prints. Without further details regarding the specific amount by which the price was affected or evidence demonstrating a causal link between the infringing O'Brien painting and any damage to the price of Hofmann's works, this conclusory testimony was insufficient to support the jury's damage award. See, e.g., Mary Ellen Enters., Inc. v. Camex, Inc., 68 F.3d 1065, 1070 (8th Cir. 1995) (finding the plaintiff had demonstrated damage to the copyright by presenting evidence that showed a decrease in value of the copyrighted book after the infringement and providing specific figures to support that testimony).

Further, the only evidence regarding the value of Hofmann's work came from Young, who stated that Hofmann's prints had sold "for many thousands of dollars and paintings for tens of thousands, maybe even $100,000." There was no evidence regarding what prints or paintings made from the "Mary's Class"

11

photograph would have been worth or how much Hofmann might have lost in sales by being unable to make prints and paintings from that photograph. Hofmann also did not present any evidence regarding a possible license fee, or what the fair market value would have been for O'Brien to obtain and use the photograph at issue. See, e.g., Abend v. MCA, Inc., 863 F.2d 1465, 1479 (9th Cir. 1988) (noting that the district court could have calculated damages "caused to the fair market value of plaintiff's story by the re-release" of an infringing film, and that "[a]ny impairment of [the plaintiff's] ability to produce new derivative works based on the story would be reflected in the calculation of the damage to the fair market value of the story"), aff'd, 495 U.S. 207 (1990). In fact, in Hofmann's own appellate brief, when posing the question of "[w]hat . . . a willing buyer [would] have been reasonably required to pay to Hofmann for Hofmann's photo," he simply answers, "a great deal." Although some speculation is permissible when awarding damages under § 504(b), the award here was based on undue speculation and is simply not adequately supported by the evidence presented at trial. Accordingly, we reverse the district court's denial of the motion for remittitur or new trial, and remand for a new trial on damages.[2]

---

[2] Although O'Brien now challenges the award of $1,550 in
(Continued)

12

O'Brien also argues, despite conceding that the jury instructions on damages were proper and not objecting to the instructions at trial, that the instructions could be improperly construed to permit non-economic damages. Under Rule 51(d)(2) of the Federal Rules of Civil Procedure, "[a] court may consider a plain error in the instructions that has not been preserved as required by Rule 51(d)(1) if the error affects substantial rights." Accordingly, "[t]his court has held that the approach set out by the Supreme Court in [United States v. Olano, 507 U.S. 725 (1993)], should also be applied in civil cases." Brickwood Contractors, Inc. v. Datanet Eng'g, Inc., 369 F.3d 385, 396 (4th Cir. 2004); see also Corti v. Storage Tech. Corp., 304 F.3d 336, 341 (4th Cir. 2002) ("Before we can exercise our discretion to correct an error not raised below in a civil case, at a minimum, the requirements of [Olano] must be satisfied.").

---

damages in addition to the $200,000, she failed to challenge this portion of the award in her motion for remittitur, and in fact conceded that this amount was "justified." However, because we are remanding for a new trial on damages, the entire damages award should be re-calculated. As to O'Brien's claim that this amount does not represent an economic loss because the district court ordered a return of the photograph produced from the photo shoot, which Hofmann testified would have cost him $1,550, the conversion claim and copyright claim represent separate injuries and therefore provide for separate remedies. Accordingly, on remand, Hofmann may again present evidence of any economic loss resulting from the copyright infringement as it pertains to the photo shoot that produced the photograph.

13

Under the standard established in Olano, "there must be an error, that error must be plain, and the error must affect the appellant's substantial rights." Brickwood Contractors, Inc., 369 F.3d at 396. Moreover, "[e]ven if these requirements are met, this court is not required to correct the error." Id. Rather, we may exercise our discretion "to correct the error only if we can conclude, 'after examining the particulars of the case, that the error seriously affects the fairness, integrity or public reputation of judicial proceedings.'" Id. at 397 (quoting Taylor v. Va. Union Univ., 193 F.3d 219, 240 (4th Cir. 1999), abrogated in part on other grounds by Desert Palace, Inc. v. Costa, 539 U.S. 90 (2003)).

The district court's instructions to the jury regarding damages were not erroneous, let alone plainly so. In its general damages instruction, the court made clear that the jury could only consider "Plaintiff's direct economic losses and out-of-pocket expenses resulting from the effect of the Defendant's infringement of the copyright."[3] The court also

---

[3] The full instruction stated:

Court's Instruction No. 8

General Damages Instruction

If you find for the plaintiff on the plaintiff's copyright infringement claim, you must determine the plaintiff's damages.

(Continued)

14

correctly explained the ways in which the jury could calculate actual damages, stating:

> Actual damages means the amount of money adequate to compensate the copyright owner for the reduction of the fair market value of the copyrighted work caused by the infringement. The reduction of the fair market value of a copyrighted work is the amount a willing buyer would have been reasonably required to pay a willing seller at the time of the infringement for the actual use made by the Defendant in the Plaintiff's work. That amount could also be represented by the lost license fees the Plaintiff would have received for the Defendant's unauthorized use of the Plaintiff's work.

The fact that the court called these damages "compensatory damages" in the general damages instruction and "actual damages" in another instruction does not constitute plain error. Although 17 U.S.C. § 504(b) refers only to "actual damages," "compensatory damages" is a sufficiently comparable term that

---

Compensatory damages consist of the plaintiff's direct economic losses and out-of-pocket expenses resulting from the effect of the defendant's infringement of the copyright. In other words, compensatory damages means the amount of money that will reasonably and fairly compensate the plaintiff for any injury you find was caused by the defendant's infringement. The basic question for your consideration is: What is the amount of money required to right the wrong done to the plaintiff by the defendant?

The plaintiff has the burden of proving damages by a preponderance of the evidence.

15

conveys the same meaning.[4]  Moreover, the explanation given to the jury for compensatory damages permits only what is allowable under § 504(b); therefore, it cannot be said that there was any adverse impact on O'Brien's rights as a result of the jury instructions.

Accordingly, we affirm in part, reverse in part, and remand for a new trial on damages.  We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid the decisional process.

<u>AFFIRMED IN PART,</u>
<u>REVERSED IN PART,</u>
<u>AND REMANDED</u>

---

[4] According to Black's Law Dictionary 445 (9th ed. 2009), "compensatory damages" are "[d]amages sufficient in amount to indemnify the injured person for the loss suffered."  The definition also refers to the entry for "actual damages," defined as "[a]n amount awarded to a complainant to compensate for a proven injury or loss; damages that repay actual losses."  <u>Id.</u>  This definition adds that actual damages are also termed "compensatory damages," "tangible damages," or "real damages."  <u>Id.</u>

16