COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Ortiz and Chaney
Argued at Lexington, Virginia

DAWAN ANTHONY GLASS

v.        Record No. 0294-21-3

COMMONWEALTH OF VIRGINIA

OPINION BY
JUDGE DANIEL E. ORTIZ
JANUARY 18, 2022

FROM THE CIRCUIT COURT OF THE CITY OF DANVILLE
James J. Reynolds, Judge

M. Lee Smallwood, II, Deputy Public Defender, for appellant.

Robin M. Nagel, Assistant Attorney General (Mark R. Herring,[1]
Attorney General, on brief), for appellee.

Though previously undecided in a criminal matter, the General Assembly's deliberate

selection and singular use of the term "fair market cost of repair" in the destruction of property

statute raises a novel question.  At issue is whether fair market cost of repair includes profits.

Appellant Dawan Anthony Glass contends that it does not.  Instead, he argues profits were

improperly included in the fair market cost of repair amount, causing the damage amount to

exceed the statutory threshold and resulting in his felony conviction.  Because the phrase "fair

market cost of repair" includes a contractor's profit and Glass did not object to the admissibility

of testimony regarding the repair value, the Commonwealth presented sufficient evidence for the

Danville City Circuit Court to find that Glass committed felony destruction of property.  Thus,

we affirm the circuit court's decision.

---

[1] Jason S. Miyares succeeded Mark R. Herring as Attorney General on January 15, 2022.

BACKGROUND

In mid-2020, Rodney Barnett reported to police that someone had broken a window at his Wyllie[2] Avenue property. The responding officer spoke with Glass, and Glass confessed to breaking the window. Barnett replaced the broken window himself for $60. Several days later, Steven Decker, another property owner, told police that he discovered several broken windows and damaged storm and internal doors at his Wyllie Avenue property. Decker, an experienced contractor, informed police that it would cost approximately $1,165 to repair the damage. While the officer was investigating the damage, neighbors informed him that Glass caused the damage. The officer located Glass, and Glass eventually confessed to damaging the property.

On direct examination at trial, Decker explained he was a contractor with more than thirty years of experience and that he used his employees to repair the property damage. He noted that his employees had to quit another job to repair the Wyllie Avenue property so his future renters could move into the duplex. In all, he estimated a total cost of $1,165, which included labor, materials, and a fifteen to twenty percent profit margin. During cross-examination, Decker also stated that "if [he] had to do the same thing for somebody else's house that is what [he] would price it at."

At the close of the Commonwealth's evidence, Glass' counsel moved to strike the Commonwealth's evidence as to the felony count. Glass' counsel argued that the cost of repair did not meet the statutory threshold because Decker included profits in his estimate. Without including a twenty percent profit, the total cost of repair fell below the $1,000 statutory threshold to approximately $986, barring the felony charge. Further, Glass' counsel contended that Decker

---

[2] Referred to as "Wiley" in the hearing transcript.

engaged in "self-dealing"[3] by including profits in his estimate, which was not permitted in cases where the owner repaired the damage himself. The circuit court overruled Glass' motion to strike and renewed motion to strike and convicted Glass of felony and misdemeanor property damage. Glass challenges only the felony count.

ANALYSIS

A. Standard of Review

For sufficiency of the evidence challenges, we review evidence "in the light most favorable to the prevailing party at trial and consider[] all inferences fairly deducible from that evidence." *Clark v. Commonwealth*, 279 Va. 636, 640 (2010) (quoting *Jones v. Commonwealth*, 276 Va. 121, 124 (2008)). Further, we will affirm a trial court's decision "unless it is 'plainly wrong or without evidence to support it.'" *Spratley v. Commonwealth*, 298 Va. 187, 193 (2019) (quoting *Commonwealth v. Perkins*, 295 Va. 323, 327 (2018)). A trial court's decision is not plainly wrong unless no rational trier of fact "could have found the essential elements of the crime beyond a reasonable doubt." *Id.* (quoting *Sullivan v. Commonwealth*, 280 Va. 672, 676 (2010)). While we review a trial court's statutory construction of the phrase fair market cost of repair *de novo*, we review "with the highest degree of appellate deference" a trial court's factual findings as to the fair market cost of repair. *Id.* at 193-94 (quoting *Bowman v. Commonwealth*, 290 Va. 492, 496 (2015)).

---

[3] In his motion to strike, Glass' counsel referred to Decker's estimate as "self-dealing." Self-dealing is defined as "[p]articipation in a transaction that benefits oneself instead of another who is owed a fiduciary duty." *Self-dealing*, *Black's Law Dictionary* (11th ed. 2019). Considering that this case does not involve fiduciaries, this Court interprets "self-dealing" to mean self-serving.

B.  The Evidence Was Sufficient Because Fair Market Cost of Repair Includes Reasonable Profit

Pursuant to Code § 18.2-137(B), a defendant is guilty of a "Class 6 felony if the value of or damage to the property . . . is $1,000 or more."  The Commonwealth may establish the amount of loss "by proof of the fair market cost of repair or fair market replacement value."  Code § 18.2-137(B).

Glass does not challenge that he intentionally caused the property damage.  Instead, he contends the Commonwealth failed to establish that the damage to Decker's property reached the $1,000 threshold necessary to convict him of a felony.  Glass' assignment of error raises two key issues:  (1) how this Court should interpret fair market cost of repair under Code § 18.2-137(B) and (2) whether any rational trier of fact could have found beyond a reasonable doubt that the damage to or value of the property was $1,000 or more.

1.  Defining Fair Market Cost of Repair under Code § 18.2-137(B)

Defining fair market cost of repair under Code § 18.2-137(B) is an issue of first impression for this Court.  The term "fair market cost of repair" is not used elsewhere in the Code of Virginia.  Further, few cases discuss how to value property damage pursuant to Code § 18.2-137(B).  *See, e.g.*, *Crowder v. Commonwealth*, 41 Va. App. 658, 664-65 (2003) (reversing a conviction when the owner failed to testify to the estimated value of his destroyed crops); *Gilliam v. Commonwealth*, No. 1254-12-1, slip op. at 10 (Va. Ct. App. May 27, 2014) (holding the Commonwealth failed to prove beyond a reasonable doubt that the cost of repair was $1,000 or more when the only testimony regarding the cost was an inadmissible hearsay statement); *Brown v. Commonwealth*, No. 2825-07-1, slip op. at 11 (Va. Ct. App. Jan. 27, 2009) (reversing a conviction where the only testimony as to value was the owner's inadmissible hearsay statement of the repair estimate she received).

In fact, only one Virginia criminal case addresses how to calculate cost of repair, but it does so in the context of a different statute. *See Cocke v. Commonwealth*, 68 Va. App. 11, 15-16 (2017) (discussing "damage to property" under Code § 46.2-894).[4]

However, "fair market value" has been defined in Virginia caselaw for over 100 years. *Seaboard Air Line Ry. v. Chamblin*, 108 Va. 42, 46 (1908). In both the criminal and civil contexts, the Supreme Court of Virginia has repeatedly defined fair market value as "the price property will bring when offered for sale by a seller who desires but is not obliged to sell and bought by a buyer under no necessity of purchasing." *See, e.g.*, *Robinson v. Commonwealth*, 258 Va. 3, 5-6 (1999) (quoting *Bd. of Supervisors v. Donatelli & Klein, Inc.*, 228 Va. 620, 628 (1985)); *see also Byrum v. Commonwealth*, No. 1201-09-1, slip op. at 3 (Va. Ct. App. May 18, 2010) (noting an item's value "is the fair market value, mainly meaning the retail value" or sale price). Further, fair market value includes the prevailing profit in the trade. *Rowland v. Kable*, 174 Va. 343, 361 (1940) ("[T]he reasonable cost of the goods, all necessary and proper handling charges and the *usual percentage of profit* prevailing in the trade . . . fix[] such value at the price the goods could have brought on a fair competitive market." (emphasis added)); *see also Hofmann v. O'Brien*, 367 F. App'x 439, 442 (4th Cir. 2010) (quoting *Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 708 (9th Cir. 2004) (determining copyright damages based on loss in the fair market value, which is often calculated by the lost profits due to infringement).

The caselaw surrounding larceny convictions also supports defining fair market cost of repair to include profits. In determining the value of stolen property to establish whether the

---

[4] The *Cocke* Court relied on the civil case *Averett v. Shircliff*, 218 Va. 202 (1977), because Code § 46.2-894 does not outline damage calculation methods. *Cocke*, 68 Va. App. at 16. The *Averett* Court explained the appropriate damages measurement was either (1) "the difference between the market value of the property immediately before and immediately after" the property damage or (2) if it is less than the diminution in value, the reasonable cost of repair to restore the property to its former condition. 218 Va. at 206 n.2.

offense is grand or petit larceny, the Commonwealth may use price tags, purchase price, or retail value. *See Robinson*, 258 Va. at 10 (price tags); *Parker v. Commonwealth*, 254 Va. 118, 121 (1997) (purchase price); *Byrum*, No. 1201-09-1, slip op. at 3 (retail price). Each of these pricing methods usually includes profit.

Glass argues the circuit court defined fair market cost of repair in two conflicting ways, that is, one amount excluding profit (Barnett's $60 window repair) and the other including profit (Decker's $1,165 estimate). This argument fails for two reasons.

First, the statute is permissive. Code § 18.2-137(B) states only that the "amount of loss . . . *may* be established by proof of the fair market cost of repair." (Emphasis added). "[T]he word 'may' is *prima facie* permissive, importing discretion, but the courts construe it to be mandatory when it is necessary to accomplish the manifest purpose of the Legislature." *Harper v. Va. Dep't of Tax'n*, 250 Va. 184, 194 (1995) (quoting *Caputo v. Holt*, 217 Va. 302, 305 n.* (1976)). The section contains no language intimating that the word "may" is mandatory. Further, the exclusive use of fair market cost of repair or fair market replacement value is not necessary to fulfill the General Assembly's purpose. This section's purpose is to determine the class of the criminal offense, and accordingly, the appropriate punishment, based on the destruction a defendant inflicted on another's property. Limiting the section to only two forms of proof would hinder the General Assembly's manifest purpose to properly punish criminal acts. Thus, the Commonwealth could put on other evidence demonstrating value, such as Barnett's actual repair costs, without contravening the statute.

Second, actual cost of repair may equal or at least indicate the fair market cost of repair.[5] *Cf. Spratley*, 298 Va. at 196 (permitting the Commonwealth to use actual replacement cost of

---

[5] Other states' courts have raised concerns that a victim's actual repair costs do not reflect fair market or reasonable cost of repair. *See People v. Hamblin*, 568 N.W.2d 339, 344

destroyed property where the particular model of damaged property was no longer available and had no fair market replacement value); *Grimes v. Commonwealth*, 62 Va. App. 470, 477 (2013) ("[R]eplacement value can, in certain circumstances, afford the fact finder a basis from which to draw inferences about the market value of the stolen item."), *aff'd*, 288 Va. 314 (2014). So, while Barnett's actual repair cost may not conclusively establish the fair market cost of repair, it provided the circuit court with a factual foundation to assess the fair market cost of repair.

Ultimately, fair market cost of repair inherently includes what the market deems reasonable profit. *See Rowland*, 174 Va. at 361. Therefore, the circuit court correctly interpreted fair market cost of repair to include Decker's profits.

2.  The Evidence Was Sufficient to Establish Beyond a Reasonable Doubt that the Cost of Repair Exceeded $1,000

Glass also challenges the sufficiency of the Commonwealth's evidence as to value because Decker's estimate was self-serving and not a transaction at arm's length. Importantly, Glass failed to object to the admissibility of Decker's testimony about the estimated cost of repair on any ground. Glass did not argue that Decker could not qualify as an expert, nor did he object to Decker's competence to give an estimate. Instead, Glass now seeks to question Decker's credibility and potential for bias. However, the circuit court evaluated both these

---

(Mich. Ct. App. 1997) (concluding that a victim's actual repair costs did not establish reasonable cost of repair because the statute focuses on the nature of the damage the defendant caused, not the victim's actual costs, especially since a victim need not repair the property). Indeed, both Texas and Michigan state courts have disregarded a victim's testimony about cost of repair when the state put on expert evidence of the estimated cost of repair. *See id.* at 344, 346 (concluding that repairs cost over $100 based on three different experts' testimony, despite victim's testimony that he repaired the damage for $45); *Elomary v. State*, 796 S.W.2d 191, 192, 194 (Tex. Crim. App. 1990) (*en banc*) (sustaining a conviction when an automobile damage appraiser testified that fair market cost of repair exceeded the statutory amount, despite the complainant's testimony that the repairs could have cost less).

characteristics, including any self-serving tendencies, during Decker's testimony.[6] We must accept the trier of fact's "determination of the credibility of witness testimony unless, 'as a matter of law, the testimony is inherently incredible.'" *Lambert v. Commonwealth*, 70 Va. App. 740, 759 (2019) (quoting *Nobrega v. Commonwealth*, 271 Va. 508, 518 (2006)). Here, the circuit court accepted Decker's testimony as credible, despite the potential risk of bias. As such, and because Decker's testimony is not inherently incredible as a matter of law, we will not disturb the circuit court's credibility determination.

As a final note, we find unpersuasive the Commonwealth's argument that the $1,000 threshold was met even if the circuit court excluded profits because Decker lost rent and profits from other missed contracting jobs. "When the language of a statute is unambiguous, we are bound by the plain meaning of that language." *Kozmina v. Commonwealth*, 281 Va. 347, 349 (2011) (quoting *Conyers v. Martial Arts World of Richmond, Inc.*, 273 Va. 96, 104 (2007)). Code § 18.2-137(B) states that the $1,000 threshold is determined by "the value of or damage to the property." Neither the value of nor damage to the property includes Decker's opportunity costs from missed contracting jobs nor speculative rental income.[7] In this case, these costs should not be considered under the statute.

---

[6] We understand the potential unfairness in allowing victims to testify as to the cost of repair. Owners are generally not in the best position to provide accurate cost of repair estimates. *See Cocke*, 68 Va. App. at 13 (relying on two experts' testimony as to cost of repair); *cf. Gilliam*, No. 1254-12-1, slip op. at 8 (implying that if a witness had personal knowledge of the cost of repair and testified as such, his testimony could establish the damage value). On the whole, many more people understand and can evaluate their property's value rather than what it would cost to repair it. Even our civil jurisprudence often uses expert testimony to establish fair market value. *See, e.g.*, *Cnty. of Albemarle v. Keswick Club, L.P.*, 280 Va. 381, 384, 388 (2010). Yet, because the parties did not raise nor brief this question, we decline to determine whether expert testimony must be given to prove fair market cost of repair in a criminal matter.

[7] The record is far from clear that Decker lost rental income, despite the renters' willingness to move into the duplex. Thus, any inferences that may flow from the evidence before us are merely speculative.

CONCLUSION

Overall, under Code § 18.2-137(B), fair market cost of repair includes profit. Additionally, Glass failed to challenge Decker's competence as an expert witness to estimate the cost of repair, and the circuit court was free to weigh Decker's uncontradicted testimony as it saw fit. As such, we affirm Glass' conviction.

*Affirmed.*