PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

NICOLE M. ROBINSON,

*Plaintiff-Appellee,*

v.

EQUIFAX INFORMATION SERVICES, LLC,

*Defendant-Appellant.*

No. 07-2094

NICOLE M. ROBINSON,

*Plaintiff-Appellant,*

v.

EQUIFAX INFORMATION SERVICES, LLC,

*Defendant-Appellee.*

No. 07-2098

NICOLE M. ROBINSON,

*Plaintiff-Appellee,*

v.

EQUIFAX INFORMATION SERVICES, LLC,

*Defendant-Appellant.*

No. 07-2100

Appeals from the United States District Court
for the Eastern District of Virginia, at Alexandria.
Gerald Bruce Lee, District Judge.
(1:06-cv-01336)

Argued: December 4, 2008

Decided: March 16, 2009

Before WILLIAMS, Chief Judge, and SHEDD and AGEE,
Circuit Judges.

---

Affirmed in part and vacated and remanded in part by published opinion. Chief Judge Williams wrote the opinion, in which Judge Shedd and Judge Agee joined.

---

## COUNSEL

**ARGUED:** Barry Goheen, KING & SPALDING, LLP, Atlanta, Georgia, for Equifax Information Services, LLC. Alexander Hugo Blankingship, III, BLANKINGSHIP & ASSOCIATES, PC, Alexandria, Virginia, for Nicole M. Robinson. **ON BRIEF:** John W. Montgomery, Jr., MONTGOMERY & SIMPSON, LLLP, Richmond, Virginia, for Equifax Information Services, LLC. Thomas B. Christiano, BLANKINGSHIP & ASSOCIATES, PC, Alexandria, Virginia, for Nicole M. Robinson.

---

## OPINION

WILLIAMS, Chief Judge:

   After discovering that a thief had stolen her identity and ruined her credit, Nicole M. Robinson sought to have Equifax

Information Services, LLC ("Equifax"), a credit reporting service, correct the resulting errors in her credit report. Several years later, however, Robinson continued to experience credit problems resulting from Equifax's mishandling of her credit file. In response, Robinson brought this action against Equifax for violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C.A. § 1681 *et seq.* (West 1998 & Supp. 2008). A jury found that Equifax had violated the FCRA in numerous respects and awarded Robinson $200,000 in actual damages. The district court entered judgment in that amount and granted Robinson's request for attorney's fees in the amount of $268,652.25. On appeal, Equifax challenges the award of damages and attorney's fees. We affirm in part and vacate and remand in part.

## I.

In April 2000, Robinson discovered that a woman named Nicole Antoinette Robinson had stolen her identity and opened fraudulent accounts in her name and under her social security number. Shortly after discovering that she had been the victim of identity theft, Robinson began the process of restoring her credit history. Specifically, she filed a police report, called the Federal Trade Commission hotline and opened a case, and spent the next five months trying to correct the erroneous entries on her credit report. As a result of her efforts, by 2001 Robinson's credit report was free of all fraudulent accounts caused by the identity thief. During this same time, but unrelated to her identity theft, Robinson lost her job and was forced to file for bankruptcy protection in May 2001. Robinson was able to obtain a discharge of her debts by September 2001, but this was not the end of Robinson's financial and credit woes. Unfortunately, it was just the beginning.

For several more years, Robinson continued to experience credit problems resulting from Equifax's mishandling of her credit file. Equifax mistakenly placed Robinson's address and social security number on three credit files established by the

identity thief, each of which contained derogatory credit accounts (the "identity thief's files"). Consequently, Equifax sent various creditors requesting Robinson's credit report her actual credit file along with one of the identity thief's files.

As a result of these errors, Robinson's credit problems persisted and she experienced difficulties obtaining any type of consumer credit from 2003 until 2006. For example, in October 2003, Robinson applied for a credit card for the first time since filing for bankruptcy protection. Her credit card application, however, was denied in part based on derogatory information contained in one of the identity thief's files that Equifax sent the credit card company.

In January 2004, after discovering the company's errors, Robinson contacted Equifax. The company properly combined two of Robinson's files into a single file, suppressed fraudulent information, and "cross blocked" fraudulent information so that it could not return to the file. When Equifax attempted to correct these mistakes, however, the company exacerbated matters further by placing Robinson's identification information on another one of the identity thief's files.

As a result, Robinson's credit problems continued and she was not able to obtain a home loan over the course of the next couple of years. In January 2005, Robinson tried to secure a home loan from a mortgage company, but she was turned down because Equifax sent the mortgage company one of the identity thief's files. The loan officer told Robinson that he could not give her a loan until the numerous problems in her Equifax credit report were corrected. Chagrined that Equifax had not yet corrected all of the errors in her credit report, Robinson contacted Equifax's Director of Consumer Affairs on February 9, 2005, who removed Robinson's identification from one of the identity thief's files.

Several months later, in May of 2005, yet another error occurred when Equifax, responding to a request to place a

fraud alert on Robinson's account, inadvertently placed Robinson's social security number and address on another of the identity thief's files. Unaware of this most recent error, Robinson applied for another home loan in January of 2006. Yet again, Equifax sent the mortgage company her correct file along with one of the identity thief's files. Although the loan officer prepared a preapproval letter for Robinson, he could only offer her a loan on far less advantageous terms than she might have qualified for absent Equifax's still inaccurate credit report. After contacting Equifax to fix this most recent error, Robinson applied for another mortgage in July 2006. Once again, Equifax sent another one of the identity thief's files to the mortgage lender. The loan officer showed Robinson all of the derogatory accounts Equifax was reporting, and ultimately concluded that "there was no way that I could possibly help her get the loan that she was trying to get" until the derogatory accounts in her Equifax credit report were resolved. (J.A. 697.)

To make matters worse, Robinson had to spend hundreds of hours out of work trying to correct Equifax's mistakes. The stress of these problems weighed on Robinson and the physical and emotional toll she experienced was apparent to others, particularly her family and co-workers. During this period, Robinson frequently experienced headaches, sleeplessness, skin acne, upset stomach, and hair loss.

On November 22, 2006 — following several years of struggling with Equifax to correct her credit report — Robinson filed this action against the company in the United States District Court for the Eastern District of Virginia, alleging violations of the FCRA and seeking actual and punitive damages. Neither party filed a dispositive motion, and the case proceeded to trial. At the close of Robinson's case in chief, Equifax moved for judgment as a matter of law, arguing that Robinson had failed to present sufficient evidence to support an award of actual or punitive damages, which the district court took under advisement. Equifax renewed its motion at

the close of all evidence, which the district court again took under advisement. Ultimately, the district court granted Equifax's motion with respect to punitive damages, denied the motion with respect to actual damages, and sent the case to the jury for deliberations. Following deliberations, the jury awarded Robinson $200,000 in actual damages. Thereafter, both parties filed post-trial motions — Robinson moved for an award of attorney's fees and costs, and Equifax moved for a new trial. The district court denied Equifax's motion for a new trial and issued a memorandum opinion granting Robinson approximately 90% of her fee request, in the amount of $268,652.25. This appeal followed, and we possess jurisdiction under 28 U.S.C.A. § 1291 (West 2006).

## II.

"Congress enacted [the] FCRA in 1970 to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Saunders v. Branch Banking & Trust Co. of Va.*, 526 F.3d 142, 147 (4th Cir. 2008) (quoting *Safeco Ins. Co. of Am. v. Burr*, 127 S.Ct. 2201, 2205-06 (2007)). The FCRA seeks to accomplish those goals by requiring consumer credit reporting agencies to maintain "'reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other information in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information. . . .'" 15 U.S.C.A. § 1681(b).

The FCRA creates a private right of action allowing injured consumers to recover "any actual damages" caused by negligent violations and both actual and punitive damages for willful noncompliance. *See* 15 U.S.C.A. §§ 1681n, 1681o. Actual damages may include economic damages, as well as damages for humiliation and mental distress. *Sloane v. Equifax Info. Servs.*, 510 F.3d 495, 500 (4th Cir. 2007). The Act further "provides that a successful plaintiff suing under the FCRA

may recover reasonable attorney's fees." *Id.* (citing 15 U.S.C.A. §§ 1681n(a)(3), 1681o(a)(2)).

Equifax contends that, despite its numerous statutory violations, the jury erred in awarding Robinson damages and the district court erred in awarding attorney's fees.[1] We consider Equifax's contentions in turn.

## A.    Actual Damages

### 1.

Equifax first argues that there was not a legally sufficient evidentiary basis for a reasonable jury to have found that Equifax's conduct resulted in Robinson's damages. Equifax claims that the evidence Robinson offered was based on pure speculation and conjecture, such that the district court erred in denying the company's motion for judgment as a matter of law. "We review de novo the grant or denial of a motion for judgment as a matter of law." *Anderson v. Russell*, 247 F.3d 125, 129 (4th Cir. 2001). Pursuant to Fed. R. Civ. P. 50(a), a "district court may grant a motion for judgment as a matter of law during a jury trial after a party has been fully heard on an issue only if 'there is no legally sufficient evidentiary basis for a reasonable jury to have found for that party with respect to that issue.'" *Brown v. CSX Transp., Inc.*, 18 F.3d 245, 248 (4th Cir. 1994) (citing Fed. R. Civ. P. 50(a)).

---

[1] In addition to these arguments, Equifax challenges two of the district court's evidentiary rulings. The company contends that the district court (1) erroneously admitted evidence of collection notices and calls received by Robinson from creditors seeking payment on fraudulent accounts, and (2) improperly excluded evidence of what Equifax does generally in handling inaccuracies in a consumer's credit file, in accordance with the magistrate judge's order sanctioning Equifax for various discovery violations. We review a district court's decision "to admit or exclude evidence for an abuse of discretion." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999). After a careful review of the record, we conclude that Equifax's arguments are without merit, and the district court did not abuse its discretion.

In this case, Robinson bears the burden of proving actual damages sustained as a result of Equifax's activities. To meet this burden, Robinson proffered evidence of various damages she sustained as a result of Equifax's conduct, including, (1) loss of opportunity in the home mortgage market, (2) emotional distress, and (3) loss of income from missing approximately 300 hours of work addressing Equifax's mistakes. Equifax counters that Robinson did not meet her burden because she "failed to establish that she was denied any credit because of an inaccuracy in an Equifax credit report" and "presented no evidence that she sustained emotional distress proximately caused by Equifax." (Appellant's Br. at 21.) We conclude that there is more than sufficient evidence in the record connecting Equifax's errors with Robinson's damages to support the jury's actual damages award.

We turn first to the evidence relating to Robinson's loss of opportunity in the home mortgage market. The evidence presented at trial clearly demonstrates that on numerous occasions Robinson attempted to secure a home mortgage, only to be either denied outright or offered a loan on less advantageous terms than she might have received absent Equifax's errors. Indeed, two loan officers testified that the inaccurate Equifax credit reports were a substantial factor in their inability to approve Robinson for a loan, and that they could not qualify her for a loan unless and until the erroneous accounts either were paid off or removed from her credit report.

Likewise, we conclude that Robinson proffered sufficient evidence that she suffered emotional distress as a result of Equifax's errors. "Our previous cases establish the type of evidence required to support an award for emotional damages." *Sloane*, 510 F.3d at 503. As we recently explained:

> We have warned that not only is emotional distress fraught with vagueness and speculation, it is easily susceptible to fictitious and trivial claims. For this reason, although specifically recognizing that a

> plaintiff's testimony can provide sufficient evidence to support an emotional distress award, we have required a plaintiff to reasonably and sufficiently explain the circumstances of the injury and not resort to mere conclusory statements. Thus, we have distinguished between plaintiff testimony that amounts only to conclusory statements and plaintiff testimony that sufficiently articulates true demonstrable emotional distress.

*Id.* (internal quotation marks, citations, and alteration marks omitted).

In this case, Robinson presented evidence that her mental distress manifested itself as headaches, sleeplessness, skin acne, upset stomach, and hair loss. Moreover, the testimony of Robinson's friends and family members painted a detailed picture of her ongoing struggles with Equifax and the emotional toll these events took upon her. Illustratively, one of Robinson's co-workers testified that in response to her continued problems with Equifax, Robinson "would be crying" and "screaming" and often she was "upset . . . [and] stressed." (J.A. 799.) Another co-worker recounted that Robinson only complained about Equifax and that she was often "visibly upset" as a result of the company's conduct. (J.A. 732.) As her mother recalled, Robinson was "[d]istraught" and there "were changes in her physical appearance. There were changes in her demeanor, her interactions with her daughter and her family, [and] friends." (J.A. 1022-23.)

Based on these incidents and our review of the entire record, it is clear that Robinson sufficiently articulated and demonstrated the emotional distress she experienced as she attempted to correct Equifax's errors. Accordingly, we conclude that there is a legally sufficient evidentiary basis for a reasonable jury to have found that Equifax's conduct resulted in Robinson's damages.[2] We therefore affirm the district

---

[2] Based on our review of the record, we also conclude that Robinson proffered sufficient evidence of loss of income from time missed from work addressing Equifax's errors.

court's denial of Equifax's motion for judgment as a matter of law with respect to actual damages.[3]

2.

Equifax next contends that the district court committed reversible error in denying its motion for a new trial or remit-titur of the $200,000 actual damages award, arguing that the damages award was excessive in light of the evidence presented at trial. *See Cline v. Wal-Mart Stores, Inc.*, 144 F.3d 294, 305 (4th Cir. 1998) (recognizing that a damages award "must be set aside if . . . the verdict is against the clear weight of the evidence" (internal quotation marks omitted)). We review a district court's denial of a Rule 59 motion for a new trial for abuse of discretion. *Id.* at 301. A district court abuses its discretion by upholding an award of damages only when "'the jury's verdict is against the weight of the evidence or based on evidence which is false.'" *Sloane*, 510 F.3d at 502 (quoting *Cline*, 144 F.3d at 305).

Equifax attacks the denial of its motion for a new trial on numerous grounds, asserting, among other things, that (1) the district court erred by submitting to the jury a general verdict form that did not separate damages for emotional distress from those for economic injury, and (2) the district court erred by failing to overturn "the excessive emotional distress award." (Appellant's Reply Br. at 35.)[4] Equifax's strained arguments are unconvincing.

---

[3]On cross-appeal, Robinson challenges the district court's decision granting Equifax's motion for judgment as a matter of law with respect to punitive damages, asserting that the district court erred in refusing to submit the issue of punitive damages to the jury. To be sure, the FCRA allows a plaintiff to recover punitive damages for willful violations. *See* 15 U.S.C.A. §§ 1681n, 1681o (West 1998 & Supp. 2008); *Safeco Ins. Co. of Am. v. Burr*, 127 S.Ct. 2201, 2206 (2007) (recognizing that "[i]f [a violation of the FCRA is] willful, however, the consumer may have actual damages, or statutory damages ranging from $100 to $1,000, and even punitive damages."). In this case, however, evidence that Equifax acted willfully is wholly lacking. Accordingly, Robinson's argument is without merit.

[4]In support of its argument for a new trial, Equifax persists with its contention that Robinson "failed to present sufficient evidence of injury or

Turning to Equifax's complaint regarding the verdict form the district court submitted to the jury, the parties agreed to the use of a general verdict form that did not separate damages for emotional distress from those for economic injury. Indeed, the company admits that it did not raise this issue below: "That Equifax did not object to the jury verdict form does not change the fact it was improper." (Reply Br. at 37.)

"Absent exceptional circumstances, of course, we do not consider issues raised for the first time on appeal." *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 603 (4th Cir. 2004). Rather, "we consider such issues on appeal only when the failure to do so would result in a miscarriage of justice." *Id.* (citing *Muth v. United States*, 1 F.3d 246, 250 (4th Cir. 1993)). Equifax has not even argued that exceptional circumstances justifying departure from the general rule are present, and based on our review of the record, we find no exceptional circumstances warranting such departure. We therefore decline to consider this argument on appeal.

Perhaps looking for a way around this rule, Equifax now attempts to parse the award of actual damages into economic and emotional distress damages, asserting that Robinson's "emotional distress award" should be reduced to no more than $100,000. (Appellant's Reply Br. at 36.) The jury, however, did not provide one award for emotional distress and a separate one for economic damages. Rather, the jury awarded Robinson a total of $200,000 for *all* of the damages she proved at trial. Consequently, and as the company acknowledges, "there is no way to determine how much of the jury's $200,000 award is attributable to emotional damages." (Appellant's Br. at 42.) It would be pure speculation and

damages from alleged mortgage denials." (Appellant's Br. at 27). As discussed above, however, Robinson offered more than sufficient evidence of economic loss and emotional distress to sustain an award of actual damages. Accordingly, this argument is without merit.

guesswork for us to attempt to attribute any particular portion of the jury's award to emotional distress damages, and we will not engage in such an unprincipled approach.[5]

In summary, we are convinced that the jury's award is not excessive in light of the evidence presented at trial. Similar to the plaintiff in *Sloane*:

> [Robinson] did not suffer from isolated or accidental reporting errors. Rather, as a victim of identity theft, she suffered the systematic manipulation of her personal information, which, despite her best efforts, Equifax failed to correct over a protracted period of time. Of course, Equifax bore no responsibility for the initial theft, but the FCRA makes the company responsible for taking reasonable steps to correct [Robinson]'s credit report once she brought the theft to the company's attention; this Equifax utterly failed to do.

*Sloane*, 510 F.3d at 505-06. Against this backdrop, we conclude that the district court was well within its discretion in sustaining the award of $200,000 in actual damages against Equifax.

---

[5]As we recently informed Equifax, in response to a similar request, we do not employ such unsound methodologies:

> Equifax simply proposes replacing the jury's number with one of its own invention-offering $25,000 in place of $245,000. Yet when asked at oral argument to explain the basis for the proposed remittitur, Equifax's counsel could offer no legal or factual basis for this amount, conceding that the number had been taken "out of the air." Not only is such an unprincipled approach intrinsically unsound, but it also directly contravenes the Seventh Amendment, which precludes an appellate court from replacing an award of compensatory damages with one of the court's own choosing.

*Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 502-03 (4th Cir. 2007).

## B.   Attorney's Fees

Finally, Equifax challenges the district court's judgment awarding Robinson $268,652.25 in attorney's fees and costs. The FCRA provides that a prevailing plaintiff is entitled to "the costs of the action together with reasonable attorney's fees as determined by the court." 15 U.S.C.A. § 1681o(a)(2). Because Robinson obtained relief on her FCRA claims, Equifax does not dispute that she was a "prevailing party." Rather, the company argues that Robinson failed to carry her burden of proof that the hourly rate sought for each of her attorneys was reasonable.

We review an award of attorney's fees for abuse of discretion. *McDonnell v. Miller Oil Co.*, 134 F.3d 638, 640 (4th Cir. 1998). "Our review of the district court's award is sharply circumscribed; we have recognized that because a district court has close and intimate knowledge of the efforts expended and the value of the services rendered, the fee award must not be overturned unless it is clearly wrong." *Plyler v. Evatt*, 902 F.2d 273, 277-78 (4th Cir. 1990) (internal quotation marks, citations, and alteration marks omitted).

In calculating an award of attorney's fees, a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate. *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). In deciding what constitutes a "reasonable" number of hours and rate, we have instructed that a district court's discretion should be guided by the following twelve factors:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed

by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Barber v. Kimbrell's Inc.*, 577 F.2d 216, 226, n.28 (4th Cir. 1978) (adopting twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974), *abrogated on other grounds by Blanchard v. Bergeron*, 489 U.S. 87 (1989)).

After determining the lodestar figure, the "'court then should subtract fees for hours spent on unsuccessful claims unrelated to successful ones.'" *Grissom*, 549 F.3d at 321 (quoting *Johnson v. City of Aiken*, 278 F.3d 333, 337 (4th Cir. 2002). Finally, "[o]nce the court has subtracted the fees incurred for unsuccessful, unrelated claims, it then awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.* (internal quotation marks and citation omitted).

Of the various arguments raised by Equifax, we specifically address the company's contention that Robinson failed to carry her burden of proof that the hourly rate sought for each of her attorneys was reasonable.[6] As we have recognized:

[D]etermination of the hourly rate will generally be the critical inquiry in setting the reasonable fee, and the burden rests with the fee applicant to establish the reasonableness of a requested rate. *In addition to the attorney's own affidavits, the fee applicant must*

---

[6]We conclude that the remainder of the Equifax's arguments are without merit.

*produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award.* Although the determination of a market rate in the legal profession is inherently problematic, as wide variations in skill and reputation render the usual laws of supply and demand largely inapplicable, the Court has nonetheless emphasized that market rate should guide the fee inquiry.

*Plyler*, 902 F.2d at 277 (emphasis added) (internal quotation marks and citations omitted). Thus, "[t]he market rate should be determined by evidence of what attorneys earn from paying clients for similar services in similar circumstances, which, of course, may include evidence of what the plaintiff's attorney actually charged his client." *Depaoli v. Vacation Sales Assocs., L.L.C.*, 489 F.3d 615, 622 (4th Cir. 2007) (internal quotation marks and citation omitted).

In support of her burden to establish the prevailing market rate of attorneys' fees in the relevant community where the district court sits (the Eastern District of Virginia), Robinson (1) filed billing records for the two attorneys representing her and an affidavit of her lead counsel, and (2) requested the hourly rates recommended by the "Laffey Matrix," an official statement of market-supported reasonable attorney fee rates which was adopted, and is periodically updated, by the United States Court of Appeals for the District of Columbia. *See Laffey v. Northwest Airlines, Inc.*, 746 F.2d 4, 24-25 (D.C. Cir. 1984), *overruled in part on other grounds by Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516 (D.C. Cir. 1988) (en banc).

Robinson's lead counsel (a partner with Blankingship & Associates, P.C., in Alexandria, Virginia), A. Hugo Blankingship, was the only attorney who attested to his own normal billing rate and the billing rate of his associate, Thomas B. Christiano. Mr. Blankingship represented that his normal bill-

ing rate for hourly clients during the relevant time period was $350.00 per hour, and that Mr. Christiano's normal billing rate during the relevant time period was $250.00 per hour. Robinson's counsel, however, requested substantially higher hourly rates in accordance with the Laffey Matrix — $425.00 per hour for Mr. Blankingship and $305.00 per hour for Mr. Christiano. According to her attorneys, the hourly rates identified by the Laffey Matrix are reasonable "[g]iven the fact that consumer law is a special field not practiced by many attorneys and the risk[s] associated in litigating an FCRA case on a contingent basis . . . ." (J.A. 1603.) Significantly, Robinson did not file any affidavits of attorneys outside the firm of Blankingship & Associates, P.C., regarding the prevailing market rates of attorneys in the Eastern District of Virginia for similar work.

In making its lodestar calculations, the district court applied the hourly rates requested by Robinson's attorneys (i.e., $425.00 per hour for Mr. Blankingship and $305.00 per hour for Mr. Christiano). (J.A. 1802.) The district court explicitly acknowledged that the Laffey Matrix "is not binding upon the United States District Court for the Eastern District of Virginia," but concluded that "even without considering the Laffey Matrix, the hourly rates for Plaintiff's counsel are very reasonable given the firm's experience and expertise." (J.A. 1807-08.)

Although we recognize that the district court authored a very thorough memorandum opinion, we nonetheless conclude that it abused its discretion by awarding the hourly rates requested by Robinson in the absence of "satisfactory specific evidence of the prevailing market rates. . . ." *Plyler*, 902 F.2d at 277 ("In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award.") (internal quotation marks omitted)). Examples of the type of specific evidence that we have held is sufficient to verify the prevailing market

rates are affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community. *See id.* at 278 ("[A]ffidavits testifying to [the fee applicants'] own rates, experience, and skills as well as affidavits of South Carolina lawyers who were familiar both with the skills of some of the applicants and more generally with civil rights litigation in South Carolina. . . . was sufficient evidence of the prevailing market rates to support the hourly rates fixed by the district court . . ."). In this case, "beyond the affidavit of [Mr. Blankingship], [Robinson] offered no specific evidence that the hourly rates sought for h[er] attorneys coincided with the then prevailing market rates of attorneys in the Eastern District of Virginia of similar skill and for similar work, which our case law required h[er] to do." *Grissom*, 549 F.3d at 323.

The Laffey Matrix is also insufficient to carry Robinson's burden of proof. The district court properly recognized that the Laffey Matrix is not binding upon the United States District Court for the Eastern District of Virginia, and as we recently explained, "Plaintiff has provided no evidence that the Laffey Matrix, which pertains to hourly rates of litigation attorneys in Washington, D.C., is a reliable indicator of the hourly rates of litigation attorneys in [Alexandria], Virginia, a suburb of Washington, D.C." *Grissom*, 549 F.3d at 323. Moreover, we find untenable Robinson's belief that the Laffey Matrix rates are reasonable because "consumer law is a special field" and there is an appreciable "risk associated in litigating an FCRA case on a contingent basis." (J.A. 1603.) Such a rationale can hardly justify a thirty-five percent increase over the $315.00 per hour Mr. Blankingship claimed just a year earlier in *Sloane*. Moreover, the district court made a specific finding that "the matters raised in this case did not require extraordinary skills beyond those required of other counsel litigating similar FCRA issues." (J.A. 1805.) Significantly, Robinson does not challenge this finding on appeal.

Put simply, Robinson has not met her burden of establishing the prevailing market rates. There is an absence of evi-

dence in the record to support rates of $425.00 and $305.00 per hour for charges by Robinson's attorneys. Moreover, we will not rely on the hourly rates attested to by Mr. Blankingship because his affidavit, standing alone, is not sufficient evidence of the prevailing market rates. *See Plyler*, 902 F.2d at 277. Because the appellate record does not contain satisfactory specific evidence, we instruct the district court on remand to recalculate the fee award after taking additional evidence of the market rates for the type of work done in this case in the Eastern District of Virginia.

### III.

In summary, we affirm (1) the district court's order granting in part and denying in part Equifax's motion for judgment as a matter of law; (2) the district court's order denying Equifax's motion for a new trial; (3) the district court's evidentiary rulings; and we vacate the fee award and remand to the district court for further proceedings consistent with this opinion.

*AFFIRMED IN PART AND
VACATED AND REMANDED IN PART*