**BOARD OF TRUSTEES FOR The HAMPTON ROADS SHIPPING ASSOCIATION–INTERNATIONAL LONGSHOREMEN'S ASSOCIATION, Plaintiff,**

v.

**Barbara A. RANSONE–GUNNELL, Defendant.**

**Civil Action No. 2:09cv165.**

United States District Court, E.D. Virginia, Norfolk Division.

Feb. 25, 2011.

---

Richard H. Matthews, Esq., Jeffrey A. Hunn, Esq., for Plaintiff.

SuAnne Hardee Bryant, Esq., for Defendant.

## OPINION AND ORDER

F. BRADFORD STILLMAN, United States Magistrate Judge.

Pending before this court is a motion for attorney's fees filed by defendant Barbara A. Ransone–Gunnell pursuant to the fee shifting provision of the Employment Retirement Income Security Act, 29 U.S.C. § 1132(g)(1). For the reasons set forth herein, the Court DENIES the defendant's motion for attorney's fees.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The facts and procedural history of this case are more fully detailed in the Court's Opinion and Order of August 13, 2010, issued after a bench trial, finding that the plaintiff is not entitled to the relief requested in its complaint and directing the Clerk of Court to enter judgment in favor of the defendant. (See Op. & Order (Aug. 13, 2010), ECF No. 26.) The specific facts pertinent to the defendant's motion for attorney fees are set forth below.

The Hampton Roads Shipping Association ("HRSA") is an organization that represents the numerous employers in the longshore industry in the Port of Hampton Roads. The International Longshoremen's Association ("ILA") is a labor union with numerous local unions in the Port of Hampton Roads. HRSA and ILA have negotiated a number of collective bargaining agreements, which, inter alia, establish certain benefit plans for HRSA and ILA employees, which are governed by the Employment Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 et seq.

The Board of Trustees for the Hampton Roads Shipping Association–International Longshoremen's Association (the "Board of Trustees") facilitates and administers the HRSA–ILA ERISA plans. Each of the agreements creating the plans provides for the establishment of a Board of Trustees, made up of fourteen members: seven appointed by the HRSA and seven by the ILA. There is not a separate Board of Trustees for each plan; rather, one Board of Trustees administers all of the plans. With respect to each plan, the Board of Trustees is granted discretion to determine all questions of coverage and eligibility, and to construe and interpret the provisions of the Fund agreement and any terms used therein.[1] The local collective bargaining agreements also provide for a "Contract Board" made up of an equal number of HRSA and ILA representatives, which is charged with administering and interpreting all provisions of the collective bargaining agreements. Pursuant to Section 25 of the local collective bargaining agreements, all decisions of the Contract Board are final and binding on all parties.

Three of the various HRSA–ILA ERISA plans established by the collective bargaining agreements were at issue in this case. The Container Royalty Fund No. 1 ("Container Fund") provides an annual supplemental cash benefit to eligible employees, funded by a royalty assessed on containerized cargo loaded or discharged in the Port of Hampton Roads. The Vacation & Holiday Fund ("V & H Fund") provides vacation and holiday pay to eligible employees, generally paid to recipients on an annual basis. The Welfare Fund provides dental and vision bene-

---

1. See Am. & Restated Agreement & Declaration of Trust for HRSA–ILA Welfare Fund sec. 4.3(a) & (b) (Feb. 25, 2004) (Trial Ex. 6); Am. & Restated HRSA–ILA Container Royalty Fund No. 1 Plan and Trust Agreement sec. 4.4(a) & (b) (Sept. 26, 2001) (Trial Ex. 8); HRSA–ILA Vacation & Holiday Fund Agreement sec. 4.5(a) (Dec. 19, 2001) (Trial Ex. 10).

fits, disability benefits, and life insurance benefits to eligible employees.

The Board of Trustees filed a complaint against Ransone–Gunnell in Norfolk Circuit Court on October 27, 2008, and an amended complaint on March 20, 2009, asserting four counts against Ransone–Gunnell. Count I sought reimbursement of $7,500 in cash benefits allegedly overpaid to Ransone–Gunnell by the Container Fund for the 2002–2003 contract year. Count II sought reimbursement of $1,440 in vacation benefits allegedly overpaid to Ransone–Gunnell by the V & H Fund for the 2002–2003 contract year. Count III sought reimbursement of $20,543.87 in disability benefits advanced to Ransone–Gunnell, to which she allegedly was not entitled, by the Welfare Fund in connection with two periods of temporary total and temporary partial disability: (a) August 2003 through November 2003; and (b) December 2003 through December 2004. Count IV sought damages for failure to repay the same $20,543.87 in disability benefits pursuant to the terms of a promissory note executed in favor of the Welfare Fund. (ECF No. 1 Ex. 2.)

On April 9, 2009, the defendant removed the case to federal court pursuant to 28 U.S.C. §§ 1441 and 1331. (ECF No. 1.) On April 10, 2009, Ransone–Gunnell filed a Rule 12(b)(6) motion to dismiss with respect to all four counts of the amended complaint. (ECF No. 3.) The Board of Trustees filed its memorandum in opposition to the motion to dismiss on April 27, 2009. (ECF No. 5.) Ransone–Gunnell filed a reply memorandum on May 5, 2009. (ECF No. 6.) On July 16, 2009, the Court granted the defendant's motion to dismiss with respect to the breach of contract claim asserted in Count IV on the ground that it was preempted by ERISA, and denied the motion with respect to Counts I, II, and III on the grounds that each sufficiently stated a timely claim to equitable relief pursuant to ERISA's civil enforcement provision. (ECF No. 8.)

Ransone–Gunnell filed her answer to the amended complaint on July 31, 2009. (ECF No. 9.) The Court entered a final pretrial order on May 4, 2010, which included a stipulation by the parties to certain undisputed facts. (ECF No. 19.)

The Court conducted a bench trial on May 26, 2010, with closing arguments on July 16, 2010.[2] On August 13, 2010, the Court entered an Opinion and Order in which it found in favor of the defendant on all three remaining counts. (Op. & Order (Aug. 13, 2010), ECF No. 26.) Specifically, the Court found that the Board of Trustees was not entitled to reimbursement of the Container Fund or V & H Fund benefits paid to Ransone–Gunnell because: (a) the retroactive modification of her work history in May 2007 to recalculate her eligibility for Container Fund and V & H Fund benefits for the 2002–2003 contract year was based on a September 2004 policy ruling by the HRSA–ILA Contract Board that was void *ab initio* as an unauthorized attempt to amend the HRSA–ILA collective bargaining agreement, the Amended and Restated HRSA–ILA Container Royalty Fund No. 1 Plan and Trust Agreement, and the HRSA–ILA Vacation & Holiday Fund Agreement; (b) the Contract Board's decision to retroactively apply its September 2004 policy ruling to all so-called "creative compensation" settlements except for thirteen "grandfathered" cases, and the Board of Trustees' decision to adopt the Contract Board's ruling as its own, were arbitrary and unreasonable, and therefore each was an abuse of discretion;

---

**2.** Trial and all other proceedings in this matter were conducted by the undersigned upon the written consent of the parties (ECF No. 10), in accordance with the provisions of 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure.

and (c) the retroactive application of the Contract Board's September 2004 policy ruling violated ERISA's anti-cutback rule, 29 U.S.C. § 1054(g). (*Id.* at 32–49.) The Court further found that, pursuant to a subrogation clause in the Welfare Fund plan agreement, "it is clear to the Court that [Ransone–]Gunnell is obligated to reimburse the Board of Trustees for the funds she received from the Welfare Fund." (*Id.* at 26.) But because ERISA's civil enforcement provision permits only equitable relief, *see* 29 U.S.C. § 1132(a)(3), the Board of Trustees was limited to recovery only of those specific assets traceable to the proceeds of Ransone–Gunnell's workers' compensation settlement. (*Id.* at 17–25.) Ultimately, the Court found that the Board of Trustees was not entitled to any recovery with respect to the Welfare Fund because all traceable assets had been dissipated. (*Id.* at 28–31.)

The Clerk entered judgment for Ransone–Gunnell on August 13, 2010. (ECF No. 27.) The Board of Trustees did not appeal.

On August 23, 2010, Ransone–Gunnell filed a motion for attorney's fees pursuant to Rule 54 of the Federal Rules of Civil Procedure and 29 U.S.C. § 1132(g)(1), together with a memorandum of law, affidavits and exhibits in support. (ECF No. 30.) On September 7, 2010, the Board of Trustees filed its memorandum in opposition to the motion for attorney's fees. (ECF No. 31.) The motion has been fully briefed, and the Court having found that oral argument will not aid in the decisional process, the matter is now ripe for decision. *See* Fed.R.Civ.P. 78; Local Civil Rule 7(J).

## II.  *ANALYSIS*

ERISA provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g). Under Fourth Circuit precedent, this Court must evaluate the defendant's motion for attorney's fees under a three-step framework that governs fee requests in ERISA cases. *See Williams v. Metro. Life Ins. Co.,* 609 F.3d 622, 634–36 (2010); *see also Hardt v. Reliance Standard Life Ins. Co.,* —— U.S. ——, 130 S.Ct. 2149, 2154–55, 176 L.Ed.2d 998 (2010) (acknowledging the Fourth Circuit's three-step framework).

■ First, "a fees claimant must show 'some degree of success on the merits' before a court may award attorney's fees under § 1132(g)(1)." *Hardt,* 130 S.Ct. at 2158 (citing *Ruckelshaus v. Sierra Club,* 463 U.S. 680, 694, 103 S.Ct. 3274, 77 L.Ed.2d 938 (1983)). The fees claimant need not establish "substantial success" or success on a "central issue," but merely something more than "trivial success on the merits" or a "purely procedural victor[y]." *See id.* (citing *Ruckelshaus,* 463 U.S. at 688 n. 9, 103 S.Ct. 3274) (alteration in original).

■ Next, if the fees claimant is eligible for an award of attorney's fees under *Hardt,* the Court must determine in its discretion whether an award of attorney's fees is appropriate. *Williams,* 609 F.3d at 635. In doing so, the Court must consider five factors identified in *Quesinberry v. Life Insurance Co. of North America,* 987 F.2d 1017 (4th Cir.1993) (en banc). These factors include:

(1) degree of opposing parties' culpability or bad faith;

(2) ability of opposing parties to satisfy an award of attorneys' fees;

(3) whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;

(4) whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and

(5) the relative merits of the parties' positions.

*Quesinberry,* 987 F.2d at 1029 (quoting *Reinking v. Philadelphia Am. Life Ins. Co.,* 910 F.2d 1210, 1217–18 (4th Cir.1990)). As the Fourth Circuit has noted, "this five-factor approach is not a 'rigid test,' but instead provides 'general guidelines.'" *Williams,* 609 F.3d at 635 (quoting *Quesinberry,* 987 F.2d at 1029). In addition to these five factors, the Court may also "consider the remedial purposes of ERISA to protect employee rights and secure effective access to federal courts." *Id.* at 636; *Quesinberry,* 987 F.2d at 1030. "In particular types of cases, or in any individual case, . . . other considerations may be relevant as well." *Quesinberry,* 987 F.2d at 1029.

■ Finally, once the Court determines that an attorney's fees award is appropriate, the Court must then consider the reasonableness of the fee request. "In calculating an award of attorney's fees, a court must first determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs.,* 560 F.3d 235, 243 (4th Cir.2009); *Porter v. Elk Remodeling, Inc.,* No. 1:09–cv–446, 2010 WL 3395660, at *3 (E.D.Va. Aug. 27, 2010) (quoting *Robinson* in ERISA context). In deciding what constitutes a reasonable number of hours and a reasonable hourly rate, the Fourth Circuit has instructed that the district court's discretion should be guided by the twelve so-called "*Johnson* factors":

(1) the time and labor expended; (2) the novelty and difficulty of the questions

raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Robinson,* 560 F.3d at 243–244 (quoting *Barber v. Kimbrell's Inc.,* 577 F.2d 216, 226 n. 28 (4th Cir.1978) (adopting the twelve factors set forth in *Johnson v. Ga. Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974))); *Porter,* 2010 WL 3395660, at *3 (applying *Johnson* factors in ERISA context).[3] Once it has determined a lodestar figure, the Court next "subtract[s] fees for hours spent on unsuccessful claims unrelated to successful ones," and then "awards some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Robinson,* 560 F.3d at 244.

### A. Eligibility for Award of Attorney's Fees

Ransone–Gunnell is clearly eligible for an award of attorney's fees under the *Hardt* standard. Following a bench trial, she prevailed on the merits with respect to Counts I and II, seeking reimbursement of Container Fund and V & H Fund benefit payments.[4] Accordingly, the Court

---

**3.** In addition to the twelve *Johnson* factors, the Court may also consider the opposing party's ability to pay an attorney's fees award. *See Chaplin v. DuPont Advance Fiber Sys.,* 303 F.Supp.2d 766, 775 (E.D.Va.2004).

**4.** Although Ransone–Gunnell also prevailed at trial with respect to Count III, seeking reimbursement of Welfare Fund benefit payments, the Court notes that she prevailed not with a substantive defense to this particular claim, but rather on the technical ground that the

FINDS that the defendant achieved "some success on the merits," making her eligible for an award of attorney's fees pursuant to 29 U.S.C. § 1132(g).

## B. *Appropriateness of Award of Attorney's Fees*

■ In determining whether an award of attorney's fees is appropriate, the Court has considered each of the five *Quesinberry* factors, as well as the remedial purposes of ERISA. *See Williams*, 609 F.3d at 635–36; *Quesinberry*, 987 F.2d at 1029–30. In addition, the Court finds the culpability and conduct of the defendant with respect to the disability benefits advanced to her by the Welfare Fund to be relevant as well. *See Quesinberry*, 987 F.2d at 1029.

### 1. *Culpability or Bad Faith*

With respect to the first *Quesinberry* factor, the degree of the Board of Trustees' culpability or bad faith, the Court notes that conduct must be more than merely unreasonable or an abuse of discretion to be considered "culpable." *Carolina Care Plan, Inc. v. McKenzie*, 467 F.3d 383, 390 (4th Cir.2006), *abrogated on other*

grounds by Metro. Life Ins. Co. v. Glenn, 554 U.S. 105, 128 S.Ct. 2343, 171 L.Ed.2d 299 (2008).[5] " 'Culpability' ... require[s] more than 'mere negligence or error.' " *Id.* (quoting *Wheeler v. Dynamic Eng'g, Inc.*, 62 F.3d 634, 641 (4th Cir.1995)). "[C]ulpable conduct is commonly understood to mean conduct that is 'blameable; censurable; ... at fault; involving the breach of a legal duty or the commission of a fault....' " *McPherson v. Emps.' Pension Plan of Am. Re–Ins. Co.*, 33 F.3d 253, 256–56 (3d Cir.1994) (quoting *Black's Law Dictionary* (6th ed.1990)) (omissions in original).

In its August 13, 2010 Opinion and Order, the Court found that the retroactive implementation of the Contract Board's September 2004 policy ruling to Container Fund and V & H Fund benefits paid to Ransone–Gunnell in connection with the 2002–2003 contract year was "unreasonable" and therefore an "abuse of discretion." (Op. & Order 46 (Aug. 13, 2010), ECF No. 26.) Standing alone, this is not sufficient to establish culpability for the purpose of the first *Quesinberry* factor. But the plaintiff's conduct was not merely

---

plaintiff was unable to satisfy the evidentiary requirements of equitable tracing rules, which strictly limit recovery to specifically identifiable proceeds. *See In re British Red Cross Balkan Fund*, [1914] 2 Ch. 419 at 421 (Eng.) (characterizing a tracing rule as "a mere rule of evidence and not an invariable rule of law"); Restatement (Third) of Restitution § 59 & cmt. b (Tentative Draft No. 6, 2008) (recognizing that tracing rules are often characterized as "tracing fictions" which "employ presumptions to answer an otherwise unanswerable question"); Restatement (Second) of Trusts § 202 cmt. j (1959) (describing how dissipation of traceable funds extinguishes an equitable lien); Orna S. Paglin, *Application of Payments in Suretyship Transactions,* 23 New Eng. L.Rev. 667, 682 n. 108 (1988–89) (characterizing a tracing rule as "a technical device whose aim is to assist the courts in determining interests in commingled funds"). *See generally* V Austin Wakeman Scott & Wil-

liam Franklin Fratcher, *The Law of Trusts* §§ 517, 518, 521 (4th ed.1989). Indeed, as noted above, the Court expressly recognized that the Board of Trustees would have ordinarily prevailed on the substance of Claim III but for Ransone–Gunnell's dissipation of all workers compensation settlement proceeds, effectively frustrating any recovery by operation of the equitable tracing rules which limit the extent of available relief in an ERISA action. (*See* ECF No. 26, at 17–31.)

Incidentally, the Court notes that Ransone–Gunnell's success in dismissing Count IV early in the litigation was at best a "trivial success" insofar as it served solely as an alternative theory of relief for the same Welfare Fund claim asserted in Count III.

**5.** *See Carden v. Aetna Life Ins. Co.,* 559 F.3d 256, 259–60 (4th Cir.2009) (recognizing abrogation).

unreasonable or an abuse of discretion.[6] The Court further found that the September 2004 policy ruling was "completely arbitrary," with "no evidence that the Board of Trustees or the Contract Board engaged in a 'fair and searching process' " in adopting or implementing the ruling retroactively. (*Id.*) In utilizing such a "completely arbitrary" process to determine eligibility and coverage, the conduct of the Contract Board and the Board of Trustees rises beyond mere negligence, to the level of culpable conduct, albeit only marginally so. *See Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 451 (2d Cir.2006) (holding that "fail[ure] to engage in a fair and open-minded consideration" of a claim for benefits supported a finding of culpable conduct).

The Court also found that the September 2004 policy ruling was not merely an "interpretation" of the local collective bargaining agreement, as argued by the Board of Trustees, but rather, it contravened the plain language of HRSA–ILA collective bargaining agreement, the Amended and Restated HRSA–ILA Container Royalty Fund No. 1 Plan and Trust Agreement, and the HRSA–ILA Vacation & Holiday Fund Agreement, as well as "a lengthy course of conduct by all parties involved." (Op. & Order 33–41 (Aug. 13, 2010), ECF No. 26.) As such, the September 2004 policy ruling amounted to an unauthorized attempt to amend the collective bargaining agreement and the Container Fund and V & H Fund plans, which was therefore legally void *ab initio*. (*Id.* at 38, 41.) This attempt by the Contract Board and the Board of Trustees to use a policy "interpretation" to circumvent the plain language of the collective bargaining agreement and plan documents likewise rises to the level of culpability, but again, only marginally so. *Cf. Johannssen v. Dist. No. 1–Pac. Coast Dist., MEBA Pension Plan*, 292 F.3d 159, 179 (4th Cir.2002) (holding that evidence of a "deliberate attempt to interpret [a plan document] so as to minimize the grant of credits" supported a finding of bad faith where motivated by political bias).

Accordingly, the first *Quesinberry* factor weighs slightly in favor of an award of attorney's fees.[7]

6. In its August 13, 2010 Opinion and Order, the Court addressed the September 2004 Policy ruling and related actions primarily as a decision by the Contract Board, rather than by the Board of Trustees. But as the Court noted, the Board of Trustees "in their discretion and by a unanimous vote, approved the implementation of the Contract Board's ruling." (Op. & Order 41 n. 14 (Aug. 13, 2010), ECF No. 26.) Indeed, with respect to multiemployer plans, "ERISA vests the 'exclusive authority and discretion to manage and control the assets of the plan' in the trustees alone, and not the employer or the union." *NLRB v. Amax Coal Co.*, 453 U.S. 322, 333, 101 S.Ct. 2789, 69 L.Ed.2d 672 (1981) (quoting 29 U.S.C. § 1103(a)), and the Container Fund and V & H Fund plan documents themselves expressly charge the Board of Trustees with sole discretion to determine all questions of coverage and eligibility and to construe and interpret plan documents and any terms used therein. *See* Am. & Restated HRSA–ILA Container Royalty Fund No. 1 Plan and Trust Agreement sec. 4.4(a) & (b) (Sept. 26, 2001) (Trial Ex. 8); HRSA–ILA Vacation & Holiday Fund Agreement sec. 4.5(a) (Dec. 19, 2001) (Trial Ex. 10). Thus, for the purpose of determining the Board of Trustees' culpability in connection with the first *Quesinberry* factor, the Court considers the Board of Trustees equally culpable for those Contract Board decisions or actions it subsequently reviewed, ratified, and implemented.

7. Ransone–Gunnell also argues that the Board of Trustees' continued pursuit of this litigation after judgment was entered against it on similar claims in *Board of Trustees v. Mathis*, No. 2:08cv229 (E.D.Va.2009), constitutes evidence of culpability. But the Court notes that the *Mathis* decision remained pending on appeal long past the date of trial and judgment in this case, and simply litigating a colorable claim does not rise to the level of culpable conduct in any event. *See LaForest v. Honeywell Int'l Inc.*, 569 F.3d 69, 77 (2d Cir.2009).

### 2. *Ability to Pay*

With respect to the second *Quesinberry* factor, the ability of the Board of Trustees to satisfy an award of attorney's fees, the plaintiff concedes that it is able to pay an award of reasonable attorney's fees. The Court notes that there is nothing in the record to suggest that any fee award would be paid out of the assets of the plans rather than "out of the pockets of the people responsible for the denial of benefits." *See Quesinberry*, 987 F.2d at 1030 n. 12. While the plaintiff's ability to pay, standing alone, would not justify an award of fees, this second *Quesinberry* factor nevertheless weighs in favor of an award of attorney's fees. *See Carolina Care Plan*, 467 F.3d at 391.

### 3. *Deterrent Effect*

With respect to the third *Quesinberry* factor, whether an award of attorney's fees against the Board of Trustees would deter other persons acting under similar circumstances, the Court notes that, as a general matter, an award of fees in this case would serve to deter plan fiduciaries from "making [similar] future hasty and unsupported decisions." *See Mitchell v. Fortis Benefits Ins. Co.*, 163 Fed.Appx. 183, 194 (4th Cir. 2005) (per curiam). But in light of the marginal culpability of the plaintiff, the Court considers the deterrent effect of any award of attorney's fees to be similarly limited. *See, e.g., Phillips v. Brink's Co.*, No. 2:08CV00031, 2009 WL 3681835, at *3 (W.D.Va.2009) (third factor carries more weight where opposing party is found in breach of fiduciary duty). Accordingly, the third *Quesinberry* factor weighs slightly in favor of an award of attorney's fees.

### 4. *Common Benefit/Significant Legal Question*

With respect to the fourth *Quesinberry* factor, whether Ransone–Gunnell sought to benefit all participants and beneficiaries of the three HRSA–ILA ERISA plans at issue here, or to resolve a significant legal question regarding ERISA itself, the Court notes that Ransone–Gunnell failed to address this factor at all in her motion for attorney's fees and supporting memorandum. The Board of Trustees, meanwhile, argues that Ransone–Gunnell alone stood to benefit from this action, and the Court agrees. Moreover, this case did not raise a significant legal question regarding ERISA itself, focusing instead on the structure and specific provisions of the benefit plans at issue, and on the application of the technical rules of equitable tracing. Accordingly, the fourth *Quesinberry* factor weighs against an award of attorney's fees.

### 5. *Relative Merits*

With respect to the fifth *Quesinberry* factor, the relative merits of the parties' positions, the Court notes that Ransone–Gunnell prevailed on the merits with respect to Counts I and II, seeking reimbursement of Container Fund and V & H Fund benefits respectively, but she prevailed with respect to Count III, seeking reimbursement of Welfare Fund benefits, not on the merits, but rather on the technical ground that the Board of Trustees was unable to satisfy the evidentiary requirements of equitable tracing rules, which strictly limited any recovery to specifically identifiable proceeds of Ransone–Gunnell's workers compensation settlement, which had been entirely dissipated by the time of trial in this matter. *See supra* note 4. On the merits of Count III, however, the facts and law clearly favored the Board of Trustees, with the Court finding that, pursuant to a subrogation clause in the Welfare Fund plan agreement, "it is clear to the Court that [Ransone-]Gunnell is obligated to reimburse the Board of Trustees for the funds she received from the Welfare Fund." (Op. & Order 26 (Aug. 13, 2010), ECF No. 26.) The Court further notes that the Container Fund and V & H Fund claims as to which Ransone–Gunnell prevailed on the merits involved reimburse-

ment of benefit payments totaling $8,440.00; meanwhile, the Welfare Fund claim on which the Board of Trustees would have prevailed on the merits, but for the defendant's dissipation of any traceable assets, involved reimbursement of benefit payments totaling $20,583.87. The Court therefore considers the Board of Trustees to be the party with a stronger relative position on the merits of the claims at issue in this case. Accordingly, the fifth *Quesinberry* factor weighs against an award of attorney's fees.

### 6. *Remedial Purposes of ERISA*

The Court has also considered the remedial purposes of ERISA to protect employee rights and secure effective access to the federal courts. *Williams,* 609 F.3d at 636; *Quesinberry,* 987 F.2d at 1030. As noted in her motion and supporting memorandum, Ransone–Gunnell is not employed and has limited assets. *See Williams,* 609 F.3d at 636. The defendant's ability to pay therefore weighs in favor of an award of attorney's fees.

### 7. *Other Relevant Considerations*

In addition to the five *Quesinberry* factors and the remedial purposes of ERISA, the Court has found the culpability and conduct of the defendant with respect to the disability benefits advanced to her by the Welfare Fund to be relevant in this particular case. *See Quesinberry,* 987 F.2d at 1029. At trial, Ransone–Gunnell testified that she believed that she had fully satisfied any debt she owed to the Welfare Fund when she met with an HRSA–ILA Welfare Fund official in May 2005 and signed over a $3,813.13 check she had received in partial settlement of her

workers compensation claim. (Tr. 219–20, ECF No. 23; *see also* Op. & Order 26 n. 8 (Aug. 13, 2010), ECF No. 26.) As noted in the Court's August 13, 2010 Opinion and Order, the Court found that Ransone–Gunnell's testimony was not credible. (Op. & Order 26 n. 8 (Aug. 13, 2010), ECF No. 26.) The evidence of record amply supports this finding and suggests that Ransone–Gunnell's dissipation of an additional $66,900 in workers compensation settlement proceeds without first reimbursing the HRSA–ILA Welfare Fund for the remaining balance of $20,543.87 in disability benefits it had advanced constitutes not just culpable conduct by Ransone–Gunnell, but bad faith.

By way of a series of weekly or semi-weekly checks, the HRSA–ILA Welfare Fund advanced Ransone–Gunnell a total of $24,375 in disability benefit payments for two separate periods of temporary disability: (a) August 2003 to November 2003; and (b) December 2003 to December 2004. (*See* Trial Exs. 24, 33, 34.) On December 16, 2003, Ransone–Gunnell executed a promissory note in favor of the Welfare Fund which expressly advised that these short-term disability benefit payments were advances which were to be repaid to the Welfare Fund if she later received workers compensation benefits for the same injuries. (Trial Ex. 12.)

On or about March 2, 2005, a U.S. Department of Labor Office of Workers' Compensation Programs ("OWCP") official sent a letter to Ransone–Gunnell advising her that the HRSA–ILA Welfare Fund had asserted a lien in connection with her federal workers compensation claim.[8]

---

8. At trial, Ransone–Gunnell denied having received the letter. (Tr. 218, ECF No. 23.) Having found her testimony not credible, and finding no other evidence to suggest that the letter as not in fact mailed on or about the date (March 2, 2005) and to the address (Ransone–Gunnell's) indicated on its face, the

Court considers the letter to have been mailed to and received by Ransone–Gunnell, irrespective of her later recollection of it. The Court further notes that a signed copy of the letter found its way into not just one, but two separate OWCP case files (Nos. 5–116842 and 5–114022), and Ransone–Gunnell was unable

(Trial Ex. 36, at OWCP 9.) On or about May 17, 2005, Ransone–Gunnell's attorney forwarded a check for $3,813.13 to her, advising that it was subject to a lien by the HRSA–ILA Welfare Fund, and expressly noting that it pertained only to her temporary disability during the period August 5, 2003 through October 7, 2003, without reference to any later periods of disability. (Trial Ex. 31.)

On May 24, 2005, Ransone–Gunnell spoke with Robert Armbruster, an HRSA–ILA Welfare Fund official, on the telephone, and she met with him in person on May 25, 2005. (Tr. 181–83, 219–20, ECF No. 23; Trial Ex. 35.) In these conversations, Armbruster advised Ransone–Gunnell that the outstanding balance of the lien asserted by the HRSA–ILA Welfare Fund exceeded the $3,813.13 recently received in settlement of her August 2003 disability claim, and therefore the entire check was due to the Welfare Fund. (Tr. 181–83, ECF No. 23; Trial Ex. 35.) The evidence of record also establishes that Ransone–Gunnell acknowledged that the $3,813.13 was only partial settlement of her outstanding workers compensation claims. (Tr. 181–83, ECF No. 23; Trial Ex. 35.) Ransone–Gunnell tendered the entire $3,813.13 to the Welfare Fund, reducing the outstanding balance of the reimbursable disability benefits to $20,543.87. (Tr. 181–83, 219–20, ECF No. 23; Trial Exs. 24, 35.) [9]

On July 21, 2006, Ransone–Gunnell entered into a settlement of her remaining workers compensation claims, in connection with which she expressly represented that "there are no HRSA–ILA medical or welfare liens in this matter." (*See* Trial Ex. 37, at HRSA 089.) As an apparent result, settlement checks were made payable directly to her, notwithstanding the HRSA–ILA Welfare Fund lien on file with the OWCP.

On November 30, 2005, Ransone–Gunnell received payment in the amount of $34,500, representing the federal portion of her workers compensation settlement. (Op. & Order 28 (Aug. 13, 2010), ECF No. 26.) Gunnell deposited the payment directly into her personal bank account and all traceable proceeds were fully dissipated by May 2006. (*Id.* at 28–30.)

On December 15, 2005, Ransone–Gunnell received payment in the amount of $32,400, representing the state portion of her workers compensation settlement. (*Id.* at 30.) Gunnell deposited the payment directly into her personal bank account and all traceable proceeds were fully dissipated by June 2006. (*Id.*)

Based on the evidence of record, the Court finds that Ransone–Gunnell knew or should have known that the $66, 900 in workers compensation settlement payments she received in November and December 2005 were subject to a lien assert-

---

to offer any reasonable explanation why she might not have received it. (*See* Trial Ex. 36.) In any event, the evidence of record suggests that Ransone–Gunnell was advised of the lien on subsequent occasions by her attorney and by an HRSA–ILA Welfare Fund official. (*See* Tr. 182–83; Trial Exs. 31, 35.)

**9.** The Court notes that Ransone–Gunnell testified that Armbruster told her she was "good to go," and that, based on this statement, she understood her obligation to reimburse the HRSA–ILA Welfare Fund to be fully satisfied by her tender of the $3,813.13 check. (Tr.

219–20, ECF No. 23.) Based on (a) her demeanor as a witness at trial, (b) Armbruster's testimony that he did not recall having said anything of the sort to her, (c) the contemporaneous and regularly kept Call Center History notes recorded by Armbruster in connection with his conversations with Ransone–Gunnell, and (d) the content of the May 17, 2005 letter received by Ransone–Gunnell from her attorney, the Court rejected Ransone–Gunnell's testimony as not credible. (Op. & Order 26 n. 8 (Aug. 13, 2010), ECF No. 26; *see also* Tr. 181–83, 219–20, ECF No. 23; Trial Exs. 31, 35.)

ed by the HRSA–ILA Welfare Fund for reimbursement of $20,543.87 in short-term disability benefits advanced to her subject to a subrogation clause in the Welfare Fund plan agreement. Her tender to the Welfare Fund of a $3,813.13 settlement check received in May 2005 did not fully satisfy, dissolve, or otherwise compromise the outstanding lien, nor could she have reasonably believed that it did. Based on this, together with her subsequent misrepresentation to a government agency that her workers compensation settlement was not subject to any HRSA–ILA medical or welfare liens and her deliberate dissipation of all settlement proceeds, the Court finds that Ransone–Gunnell's conduct constitutes not just culpable conduct by Ransone–Gunnell, but bad faith. *See Black's Law Dictionary* 134 (7th ed.1999) (defining "bad faith" as "[d]ishonesty of belief or purpose"). This bad faith conduct weighs strongly against an award of attorney's fees.

The Court further notes that the $20,543.87 in Welfare Fund benefits, for which Ransone–Gunnell was able to evade her reimbursement obligation to the HRSA–ILA Welfare Fund due to her dissipation of any traceable proceeds, constitutes a windfall accrued through this bad faith conduct, the value of which happens to approach the $24,289.80 in attorney's fees sought by this motion.

### 8. *An Award of Attorney's Fees Is Not Appropriate*

Based on the consideration of all of the above, the Court FINDS that an award of attorney's fees to the defendant is not appropriate. In particular, the Court notes that it has found the relative culpability of the parties (the Board of Trustee's marginally culpable conduct with respect to Counts I and II versus Ransone–Gunnell's bad faith dissipation of traceable assets with respect to Count III) and the relative merits of their positions (the fifth *Quesin-*

*berry* factor) to be the most compelling considerations in this analysis. But all five of the *Quesinberry* factors, the remedial purposes of ERISA, and the defendant's bad faith conduct have been considered and duly weighed.

### C. *Reasonableness of Requested Attorney's Fees*

Having found that an award of attorney's fees is not appropriate, the Court does not reach the third step of the analysis prescribed by the Fourth Circuit in *Williams.*

## III. CONCLUSION

For the foregoing reasons, the Court DENIES the defendant's motion for an award of attorney's fees (ECF NO. 30.)

IT IS SO ORDERED.